**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| WILLIAM CONSALO & SONS FARMS, INC., | No. CV-10-049-TUC-CKJ |
| Plaintiff, | **ORDER** |
| vs. | |
| DROBNICK DISTRIBUTING, INC; EDWARD and DEBORAH DROBNICK; BABALUCI FRESH FRUIT & VEGETABLES, LLC aka WHOLE FOODS & VEGETABLES; MARCO ANTONIO SIQUEIROS; and VERONICA SIQUEIROS, | |
| Defendants. | |
| DROBNICK DISTRIBUTING, INC., a California corporation, | |
| Cross-Complainant, | |
| vs. | |
| MARCO ANTONIO SIQUEIROS, and BABALUCI FRESH FRUIT & VEGETABLES, LLC aka WHOLE FOODS & VEGETABLES, | |
| Cross-Defendants. | |

Pending before the Court is Plaintiff's Motion for Summary Judgment Against Defendants Drobnick Distributing, Inc., Edward Drobnick and Deborah Drobnick [Doc. 101]. On September 1, 2010, Defendants Drobnick Distributing, Inc., Edward Drobnick and

Deborah Drobnick ("Drobnick Defendants") filed their Opposition to Plaintiff's motion for Summary Judgment Against Defendants Drobnick Distributing, Inc., Edward Drobnick and Deborah Drobnick [Doc. 109]. On September 16, 2010, Plaintiff filed their Reply [Doc. 110]. On February 28, 2011, this Court heard oral arguments on the motion.

## I. FACTUAL BACKGROUND

This lawsuit was brought under the Perishable Agriculture Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.* Plaintiff is a New Jersey corporation engaged in the business of selling wholesale quantities of perishable agricultural commodities (produce) in interstate commerce.[1] Defendant Babaluci Fresh Fruit & Vegetables, LLC is an Arizona limited liability corporation here in Tucson. Defendant Babaluci is a produce dealer and a licensed PACA dealer. Defendant Marco Siqueiros is Defendant Babaluci's principal.[2] Defendant Drobnick Distributing is a California corporation, which is licensed under PACA. Defendants Edward and Deborah Drobnick allegedly control Defendant Drobnick Distributing.[3] On March 29, 2010 and April 21-22, 2010, this Court held an evidentiary hearing regarding the preliminary injunction.[4] The Motion for Summary Judgment [Doc. 101] currently pending before the Court is against the Drobnick Defendants only, the Court having entered default judgment against the Babaluci Defendants.

In January 2009, Plaintiff contracted with Siqueiros to act as its agent to buy and sell produce, working out of Plaintiff's Nogales, Arizona office. Siqueiros was to be paid on commission. Between September and December of 2009 Siqueiros purchased approximately

---

[1] Vince Consalo is Plaintiff's principal, and appears as "Consalo" herein.

[2] Collectively, Defendant Babaluci Fresh Fruit & Vegetables, LLC and Marco Siqueiros shall be referred to as the "Babaluci Defendants." Defendant Marco Siqueiros shall be referred to as "Siqueiros," since Defendant Veronica Siqueiros has no role in any of the facts before the Court.

[3] Collectively, Defendants Drobnick Distributing and Edward and Deborah Drobnick shall be referred to as the "Drobnick Defendants."

[4] A representative from each party testified during the preliminary injunction hearing.

$2.5 million worth of produce from various suppliers in Plaintiff's name. Plaintiff was invoiced and paid the suppliers for the produce purchased by Siqueiros.

Plaintiff sent invoices to Defendant Drobnick Distributing for the sale of the produce. These invoices contained the language required by 7 U.S.C. § 499e(c)(4) to preserve Consalo's PACA trust rights against Drobnick Distributing. Although the Drobnick Defendants admit that the invoices contained the requisite PACA language, the Drobnick Defendants dispute that they purchased produce from Plaintiff or that Plaintiff obtained any PACA trust rights against Drobnick Distributing. In turn, Defendant Drobnick Distributing sent invoices to Defendant Babaluci for this produce, which also contained the notice to preserve PACA trust rights set forth in 7 U.S.C. § 499e(c)(4) to preserve Defendant Drobnick Distributing's PACA trust rights against Defendant Babaluci. Defendant Drobnick Distributing disputes that the produce was sold by it to Defendant Babaluci. Rather, Defendant Drobnick Distributing asserts that it merely agreed to process invoices for Defendant Babaluci for an agreed transaction fee of $0.25 per carton to facilitate the establishment of a credit rating for Defendant Babaluci. The Court notes the testimony of Siqueiros during the preliminary injunction hearing, where he stated that Defendant Drobnick "was doing the brokerage, yes." Hr'g Tr. 4/21/10 at 28:20.

Plaintiff avers that over the course of the relationship between Drobnick Distributing, Siqueiros and Babaluci, it sold approximately $2.7 million worth of produce to Drobnick Distributing. The Drobnick Defendants dispute this characterization arguing that there were few transactions which were actually sales of produce from Plaintiff to Drobnick Distributing, all of which have been paid in full, urging that the remainder of the transactions were for re-invoicing. Plaintiff further avers that between September and December 2009, without knowledge or consent of Plaintiff, Defendant Drobnick Distributing resold and reinvoiced to Defendant Babaluci the same produce sold and invoiced to Defendant Drobnick Distributing by Plaintiff with an upcharge of $0.25 per case. The Drobnick Defendants dispute this characterization stating that Siqueiros stated that he made Consalo aware of the fact that Drobnick Distributing was acting as an invoicing service, and that Siqueiros was in

1  fact selling the produce to customers in New York and Houston, which was being invoiced
2  by Plaintiff to Drobnick Distributing. Additionally, Siqueiros would fax all documentation
3  for the produce to both the Drobnick Defendants and Plaintiff. The Drobnick Defendants
4  further assert that Siqueiros testified that Consalo only claimed to not know that Drobnick
5  Distributing was strictly doing the invoices, and not actually ever taking possession of the
6  produce once Consalo stopped getting paid. The Drobnick Defendants go on to aver that
7  Siqueiros stated that Consalo was actually aware that Babaluci was selling the produce that
8  Siqueiros had purchased from Plaintiff at a profit, and also making a commission from
9  Plaintiff. Siqueiros also stated that Consalo was aware and agreeable to the situation as long
10 as the invoices were paid and he was making money. Prior to Defendant Edward Drobnick's
11 meeting with Consalo in January 2010, Consalo called Edward Drobnick about the unpaid
12 invoices. Drobnick told Consalo that he would call "the guy" and "see why he's not paying
13 me," and Consalo said "fine." Drobnick did not specifically define who "the guy" was
14 because Drobnick assumed that Consalo knew that he was referring to Siqueiros, and that
15 Consalo knew that Babaluci was in fact the party responsible for the money owed to Plaintiff
16 for the produce. Drobnick thought Consalo knew about the reinvoicing because Drobnick
17 Distributing received all of the paperwork for the produce from Plaintiff's office. Consalo
18 claimed to have had no involvement in the sales of the reinvoiced produce from Siqueiros
19 to Babaluci's customers, although on at least one occasion, Consalo was contacted directly
20 by the customer and notified that there was a problem with a produce delivery.[5] During the
21 times that the transactions at issue occurred, Defendant Edward Drobnick now states that he
22 believed that Consalo was fully apprised of the invoicing transactions between Drobnick
23 Distributing, Inc. and Babaluci for payment, since Siqueiros was Plaintiff's authorized agent.
24      Plaintiff avers that the accounts receivable aging report of Drobnick Distributing, Inc.
25 for Babaluci confirms that Drobnick Distributing, Inc. sold the produce supplied by Plaintiff

---

[5] Consalo testified that this was not unusual and that he would discuss the issue with Siqueiros so that he could follow up with the buyer and grower.

- 4 -

to Babaluci. Further, the Profit & Loss Statement for Drobnick Distributing confirms that Drobnick booked the transactions with Plaintiff as purchases and the transactions with Babaluci as sales. The Drobnick Defendants dispute these characterizations arguing that all the accounts receivable aging report shows is that the Drobnick Defendants were handling the reinvoicing of the transactions (the purpose of which was for Babaluci to build its credit rating). Further, the Drobnick Defendants state that the P&L Statement merely shows that Drobnick Distributing, Inc. booked $0.25 per carton in revenues from reinvoicing.

Plaintiff states that Babaluci then sold the produce to wholesalers throughout the country and collected the proceeds from the sale of the produce. Plaintiff received payments from some of the produce. In October and November 2009, the payments from Drobnick Distributing slowed and then ceased. The Drobnick Defendants dispute this arguing that it was Babaluci who controlled the payments and flow of funds, not the Drobnick Defendants. Siqueiros admits that the Babaluci Defendants owe the money for the produce.

Plaintiff asserts that it is owed $1,525,896.88 for the produce that it sold to Defendant Drobnick Distributing, Inc., and that to date it has received $29,463.75.[6] The Drobnick Defendants dispute this statement. The Drobnick Defendants state that Siqueiros admitted that the $1.5 million that Plaintiff has sued for in its complaint is actually owed by Babaluci and Siqueiros to Plaintiff, and that it is the Babaluci Defendants' responsibility to pay back Plaintiff. Beginning in June 2009 and continuing to October 2009, Drobnick Distributing, Inc. would process the invoices and forward them on to Babaluci who would in turn pay Drobnick Distributing, Inc. for the transaction fee and for the principle amount owed to Plaintiff for the produce listed on the invoices. Drobnick Distributing, Inc., promptly upon receipt of the payment from Babaluci on the invoices, would forward the principle amount owed to Plaintiff for the produce listed on the invoices. Drobnick Distributing, Inc. never received any payment from Babaluci for the principle due from the sale of the produce which

---

[6] This amount reflects the reduction in the amount received since the instigation of this proceeding, where the original total was stated as $1,555,360.63.

- 5 -

1 was not passed on to, and paid to Plaintiff. Defendant Edward Drobnick has demanded that
2 Babaluci pay all outstanding sums ultimately owed to Plaintiff from the produce, but
3 Babaluci has refused and continues to refuse to pay the outstanding principle due and owing
4 to Plaintiff for the produce totaling $1,555,360.62.[7] On numerous occasions from October
5 2009 through January 2010, Siqueiros personally told Edward Drobnick that he owed the
6 outstanding principle due for the produce to Plaintiff and was going to pay it. On January
7 27, 2010, Siqueiros's attorney, Matthew C. Davidson, Esq., called Drobnick and told him
8 that Siqueiros and Babaluci had the funds available to pay the outstanding principle owed to
9 Plaintiff for the produce and that Babaluci was holding PACA trust funds in a local bank
10 account. Mr. Davidson then forwarded a copy of one of Babaluci's bank account statements
11 to Drobnick Distributing, Inc., demonstrating that Babaluci was willing to pay the
12 outstanding principle owed to Consalo and had funds of at least $810,634.60 to do so.

13 Plaintiff avers that Edward Drobnick was an officer, director and shareholder of
14 Drobnick Distributing, Inc., responsible for running its day-to-day operations, and was in a
15 position to control the PACA trust assets belonging to Plaintiff. Further, Edward Drobnick
16 was listed on Drobnick Distributing's PACA license as a principal, and was identified as its
17 President on Drobnick Distributing's Blue Book listing. Finally, Edward Drobnick was a
18 signatory on the bank accounts maintained by Drobnick Distributing, Inc. at all relevant
19 times. Plaintiff further avers that Deborah Drobnick was also an officer, director and
20 shareholder of Drobnick Distributing, Inc., responsible for running its day to day operations,
21 and was in a position to control the PACA trust assets belonging to Plaintiff. Moreover,
22 Drobnick Distributing, Inc.'s PACA license lists her as a reported principal and responsible
23 individual of Drobnick Distributing, Inc., and the Blue Book identifies her as Drobnick
24 Distributing, Inc.'s Secretary and Treasurer. The Drobnick Defendants assert that Deborah
25 Drobnick's titles were ceremonial only, and that she did not have any day-to-day functions

---

28 [7]Whether the Babaluci Defendants have refused outright is irrelevant, it is undisputed that the Babaluci Defendants have not paid the debt owed Plaintiff.

or responsibilities with regard to Drobnick Distributing, Inc., nor did she have any authority or control over any of the PACA trust assets at issue in this cause of action.

Plaintiff avers that both Edward and Deborah Drobnick enjoyed the benefits of ownership of Drobnick Distributing, Inc. Both were salaried officers of the company, receiving payments from the Drobnick Distributing, Inc. general account in the amount of $50,906.57 and $40,831.83 respectively in the 2009 calendar year. Additionally, Edward and Deborah Drobnick utilized an American Express credit card for both business and personal use, and paid for it out of the general operating account of Drobnick Distributing, Inc. Lastly, contributions to both Edward and Deborah's retirement fund were made from the Drobnick Distributing, Inc. general operating account.

Plaintiff states that its invoices to Defendants contained the contract terms that Defendants are required to pay Plaintiff interest on all outstanding invoices and attorney fees incurred in collection of debt. Again, the Drobnick Defendants reassert their position that they do not owe the debt to Plaintiff, relying on this Court's statement that their accounting records do not show any money that they have received from Siqueiros/Babaluci that they have not passed on to Plaintiff.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Thus, factual disputes that have no bearing on the outcome of a suit are irrelevant to the consideration of a motion for summary judgment. *Id.* In order to withstand a motion for summary judgment, the nonmoving party must show "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Moreover, a

- 7 -

"mere scintilla of evidence" does not preclude the entry of summary judgment. *Anderson*, 477 U.S. at 252. The United States Supreme Court also recognized that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007).

## III.  ANALYSIS

### A. The PACA Trust

A PACA trust exists for the benefit of all the debtor's unpaid produce suppliers. 7 U.S.C. § 499e(c)(2). Congress recognized there is irreparable harm if PACA trust assets are dissipated because it is almost impossible for a beneficiary to obtain recovery once there has been dissipation from the trust. *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154 (11th Cir. 1990) (citing legislative history); *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132 (3d Cir. 2000). A PACA trust is created upon receipt of produce by a "commission merchant, dealer, or broker" and is "for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents." 7 U.S.C. § 499e(c)(2). The PACA trust is thus a defined *res* upon creation. *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282 (9th Cir. 1997). Congress intended the trust to be a nonsegregated "floating trust." H.R. Rep. 98-543 (1983). The legislative history provides:

> The trust impressed by section 5(c)(2) is a nonsegregated 'floating trust' made up of all a firm's commodity related liquid assets, under which there may be a commingling of trust assets. Under this provision there is no necessity to specifically identify all of the trust assets through each step of the asset accrual and disposal process. Since commingling is contemplated, all trust assets would be subject to the claims of unpaid seller-suppliers and agents to the extent of the amount owed them. Beneficiary claimants have the responsibility of establishing through their business records the details of the transaction on which payment is sought.
>
> As each supplier, seller, or agent transfers ownership, possession, or control

- 8 -

of perishable agricultural commodities to a commission merchant, dealer, or broker, such supplier, seller, or agent will automatically become a participant in the trust.

H.R. Rep. 98-543 at 5 (1983).

"[G]eneral trust principles apply to questions involving the PACA trust, unless those principles directly conflict with PACA." *Boulder Fruit Express & Heger Organic Farm Sales v. Transportation Factoring, Inc.*, 251 F.3d 1268, 1271 (9th Cir. 2001) (citing *Sunkist Growers, Inc.*, 104 F.3d at 282). "The Restatement of Trusts defines a breach of trust as "a violation by the trustee of any duty which as trustee he owes to the beneficiary.'" *Id.* (quoting Restatement (Second) of Trusts § 201 (1959)). The federal regulations delineate a PACA trustee's primary duty as follows:

> Commission merchants, dealers and brokers are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities. Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of Section 2 of the Act, (7 U.S.C. 499b).

7 C.F.R. § 46.46(d)(1). "Dissipation" is defined as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions." 7 C.F.R. § 46.46(a)(2). The burden is on the PACA debtor (here, the Drobnick Defendants) to show that disputed assets were acquired from non-trust sources. *In re Kornblum & Co., Inc.*, 81 F.3d 280, 286 (2d Cir. 1996); *Sanzone-Palmisano Co. v. M. Seaman Enterprises, Inc.*, 986 F.2d 1010, 1014 (6th Cir. 1993); *Six L's Packing Co. v. West Des Moines State Bank*, 967 F.2d 256, 258 (8th Cir. 1992).

The Drobnick Defendants define the *prima facie* trust claim under PACA as (1) a transaction involving produce; (2) purchase and receipt of the produce; (3) the transaction involves a merchant, dealer or broker in interstate commerce; (4) failure to pay fully and promptly or maintain the PACA trust; and (5) preservation of trust rights by proper notification. Defs.' Resp. to MSJ at 4. The Drobnick Defendants object to Plaintiff's ability to establish requisites two (2) and four (4).

- 9 -

*B. Purchase and Receipt of the Produce*

The Drobnick Defendants contend that they are not liable to Plaintiff under PACA because they never purchased nor received the produce at issue in this case. This contention is without merit.

During the preliminary injunction hearing Siqueiros testified that Edward Drobnick "was doing the brokerage, yes" for the transactions from Plaintiff. H'rg Tr. 4/21/2010 [Doc. 106] 28:20. Elsewhere, the Drobnick Defendants' counsel refers to the scheme as one for "re-invoicing." An invoice is defined as "an itemized list of goods shipped usually specifying the price and terms of sale." Merriam-Webster Online Dictionary. To invoice someone is "to send an invoice for or to." *Id.* Logically, to "reinvoice" would be to send a second invoice or bill. This implies a sale transaction irrespective of whether or not the Drobnick Defendants intended to be a straw man. In describing circumstances similar to the one with Siqueiros, Defendant Edward Drobnick testified, "I've done deals like this in the office where I bought produce for Hughes Produce, he's bought produce for me, and then we've invoiced each other a quarter[.]" *Id.* at 166:18-20. The Drobnick Defendants' counsel also explored the concept of re-invoicing with him stating:

> Q: So, then just so I'm clear on that, for example, if somebody had – if you had an account set up with Dole but another person in your office didn't have an account set up with Dole, you found out that Dole had some iceberg lettuce available at a good price, the other broker wanted to buy that lettuce for his customer as well, you might buy it all on your account and re-invoice the broker?
>
> A: Correct.

*Id.* at 101:6-13.

The Drobnick Defendants assert that they did not participate in the negotiation for the produce price, type, quantity, quality or grade. This is true; however, the Drobnick Defendants *did* negotiate the $0.25 per carton fee with Siqueiros. There was no need for the Drobnick Defendants to negotiate the price, because they were making money on the paperwork.

Furthermore, "received" is defined as "the time when the buyer, receiver, or agent

- 10 -

gains ownership, control, *or* possession of the perishable agricultural commodities." 7 C.F.R. § 46.46(a)(1) (emphasis added). Actual physical possession is not a prerequisite for liability under PACA. *Id.*; *See also F.C. Bloxom Co. v. Rojo Produce Import and Export, LLC.*, 2006 WL 2021697 (D.Or.) (finding PACA applies to commodities shipped from outside the United States because it extends to "those that engage in that industry, i.e., the dealers, commission merchants, and brokers. The [PACA] 'transaction' is not limited to the physical shipment of goods but also includes phone calls, billings and payments all made within the United States to procure the shipment of produce." *Id.* at *2.). Therefore, irrespective of the Drobnick Defendants' intent, they effectuated a sale of the produce to Babaluci through the invoicing process, thereby gaining an ownership interest of that produce.

*C. Maintenance of the PACA Trust*

The Drobnick Defendants assert that because none of the produce was ever shipped or delivered to the Drobnick Defendants, and because none of the money arising from the sale of the produce at issue was ever paid to the Drobnick Defendants no PACA trust was created with respect to them.

At least one reported case has rejected this argument. A court in the Southern District of New York observed that:

> The trust corpus extends to both the produce and the proceeds from its sale. Relinquishing control of the commodities without securing payment is "dissipation of the trust assets." Similarly, failing to turn over the trust assets when payment is due to the produce sellers breaches [the PACA debtor's] fiduciary duty to make the trust assets "freely available" to the plaintiffs.

*Bronia, Inc. v. Ho*, 873 F.Supp. 854, 861 (S.D.N.Y. 1995). The Ninth Circuit Court of Appeals has held that "third parties are not guarantors of the PACA trust. They are liable only if they had some role in causing the breach or dissipation of the trust." *Boulder Fruit Express & Heger Organic Farm Sales v. Transportation Factoring, Inc.*, 251 F.3d 1268, 1272 (9th Cir. 2001). Here, however, the Drobnick Defendants are not third parties, because they purchased the produce, they are trustees. Therefore, their failure to obtain payment from Siqueiros/Babaluci is a dissipation of trust assets.

- 11 -

Plaintiff goes on to argue that its PACA trust claim extends to all of Drobnick Defendants' assets and receivables regardless of whether they were generated from the sale of Plaintiff's produce.[8] Contemplating Ninth Circuit authority, a bankruptcy court in this district has recognized that "the assets of a PACA buyer are presumed to be part of a PACA trust unless it is shown that: (1) no PACA trust existed when the asset in question was purchased; or (2) the asset was not purchased with PACA trust assets; or (3) subsequent to purchasing the asset, the buyer paid in full all suppliers, thereby terminating the trust." *In re Bear Kodiak Produce, Inc.*, 283 B.R. 577, 583 (D.Ariz. 2002). Defendants have not met their burden in this case.

*D. Individual liability*

"An individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act . . . A PACA trust in effect imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier." *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997) (citations omitted).

If liability attaches to Drobnick Distributing, Inc. it is undisputed that it would attach to Edward Drobnick. He is the principal and primary decision maker of the company. Indeed, one could argue that the two are interchangeable. Although Plaintiff urges us to find Deborah Drobnick equally liable, this is not borne out by the evidence before the Court. The Drobnick Defendants assert that Deborah Drobnick holds corporate officer positions in name only and has no real power in the company. There is nothing to suggest that this is not true. Moreover, "payments made in the ordinary course of a produce buyer's business, including minimal salaries and expenses do not constitute a breach of a PACA trust." *In re Bear Kodiak Produce, Inc.*, 283 B.R. 577, 587 (D.Ariz. 2002). So, although Deborah Drobnick

---

[8]During oral argument Plaintiff's counsel set the date of September, 2009 as the date that his client's claims attach to Defendant's assets.

- 12 -

1 received a salary and had some expenses paid through the corporation, this is not sufficient
2 to make her liable for the dissipation of assets under PACA.

   *E. Drobnick Defendants Affirmative Defenses*

As an initial matter, in Arizona, "'an employee is acting within the scope of . . . employment while he is doing any reasonable thing which his employment expressly or impliedly authorizes him to do or which may reasonably be said to have been contemplated by that employment as necessarily or probably incidental to the employment.'" *McCloud v. Kimbro*, 224 Ariz. 121, 124, 228 P.3d 113, 116 (Ct. App. 2010) (citations omitted) (alterations in original). "An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." Restatement (Third) of Agency § 7.07(2) (2006). Arizona courts have counseled that: "Whether an employee's tort is within the scope of employment is generally a question of fact. It is a question of law, however, if the undisputed facts indicate that the conduct was clearly outside the scope of employment." *McCloud v. State*, 217 Ariz. 82, 91, 170 P.3d 691, 700 (Ct. App. 2007).

Siqueiros's undisputed testimony is that he and Defendant Edward Drobnick developed the plan for Drobnick Distributing, Inc. to "reinvoice" purchases with a $0.25 per carton increase as a means for Defendant Siqueiros to cease work for Plaintiff. *See* H'rg Tr. 4/21/2010 [Doc. 106] at 26:9-22. This Court cannot find any circumstances in which Siqueiros could be construed as acting within the scope of his employment for Plaintiff. As such, the Court finds the Drobnick Defendants' arguments to the contrary unpersuasive.

Similarly, it is undisputed that the Drobnick Defendants purchased produce from Plaintiff that was invoiced to the Babaluci Defendants with a $0.25 increase.[9] Irrespective of whether or not Plaintiff consented to this transaction arrangement, the money in the PACA trust was not paid to Plaintiff. Accordingly, Plaintiff instigated this cause of action. As such,

---

[9]Recognizing that the Drobnick Defendants will strenuously dispute that it was a purchase arrangement, there is no argument that the invoices demonstrate that produce flowed from Consalo to Babaluci with a detour through Drobnick Distributing.

- 13 -

the Drobnick Defendants' assertion of consent as an affirmative defense does not have merit.

The Drobnick Defendants also assert the affirmative defense of contributory negligence. As evidence of the same, the Drobnick Defendants point to Plaintiff's failure to perform a background check or otherwise scrutinize Siqueiros before hiring him. In light of Defendant Edward Drobnick's relationship with Siqueiros prior to his working for Plaintiff, and the agreement between the two of them regarding the additional invoicing, this Court finds this affirmative defense unsupportable.

Finally, the Drobnick Defendants assert unclean hands by Plaintiff because he failed to file suit immediately after the January 2010 meeting between Plaintiff and Defendant Edward Drobnick. Plaintiff filed this lawsuit on January 25, 2010. The Court finds the Drobnick Defendants' argument is without merit. As such, the Drobnick Defendants have failed to demonstrate a genuine, material factual dispute to support denial of summary judgment.

*F. Prejudgment Interest and Attorneys' Fees*

Plaintiff asserts that it is entitled to prejudgment interest and attorneys' fees. Such an award is contemplated by PACA. *Middle Mountain Land and Produce v. Sound Commodities, Inc.*, 307 F.3d 1220 (9th Cir. 2002). The Court will, however, entertain additional briefing on this matter.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment Against Defendants Drobnick Distributing, Inc., Edward Drobnick and Deborah Drobnick [Doc. 101] is GRANTED. IT IS FURTHER ORDERED that Plaintiff shall file its motion for attorneys' fees and prejudgment interest within forty-five (45) days of the date of this Order.

DATED this 29th day of March, 2011.

_____
Cindy K. Jorgenson
United States District Judge

- 14 -